Koppers United Company, Alleged Transferee of Koppers Associates, Inc. v. Commissioner.
Koppers United Co. v. Commissioner
Docket No. 107752.
United States Tax Court
1943 Tax Ct. Memo LEXIS 303; 2 T.C.M. (CCH) 87; T.C.M. (RIA) 43231; May 13, 1943
*303 John E. McClure, Esq., O. H. Chmillon, Esq., and Edward L. Updike, Esq., for the petitioner. William A. Schmitt, Esq., for the respondent. LEECH Memorandum Opinion LEECH, Judge: Respondent determined a deficiency for 1937 of $8,855.25 in income tax against Koppers Associates, Inc., and proposes assessment of this amount as a liability against petitioner as transferee of that taxpayer. Petitioner admits that it is a transferee of the taxpayer and liable for any unpaid tax deficiency. It contests, however, the correctness of the determination against the transferor and asks a finding of overpayment by it of the tax of its transferor in the sum of $13,598.55. Two of the three issues presented by the pleadings are disposed of by the parties by stipulation. The issue for decision here is whether, in a judicial reorganization of a corporation in which petitioner's transferor was a holder of bonds upon which interest was in arrears and new bonds were issued and exchanged for the old and in their amount plus the accrued interest, such interest may be considered as a separate item paid in bonds and taxable to the extent of the fair market value of the bonds allocable thereto. Petitioner *304 is a Massachusetts voluntary association with its principal office at Pittsburgh, Pennsylvania. Its return for the taxable year 1937 was filed with the collector of internal revenue for the Twenty-third District of Pennsylvania. We find the facts as stipulated. [The Facts] On November 19, 1937, the petitioner's transferor, Koppers Associates, Inc., was liquidated by the transfer of all of its assets to its sole stockholder, the petitioner, Koppers Associates, Inc., was then dissolved.
In 1924 the transferor had acquired $25,000 face amount Woodward Iron Company first mortgage bonds at a cost of $25,000. In 1930 the Woodward Iron Company, due to the curtailment of the market for pig iron, found itself in financial difficulties. On January 1, 1933 it was unable to meet the interest on its outstanding first mortgage bonds as well as interest due on its issue of first mortgage collateral trust notes. In 1935 committees representing the holders of the bonds and the notes were formed. In 1936 committees representing the interests of the preferred and common stockholders were formed. Finally, on October 16, 1936, the Woodward Iron Company filed a petition for reorganization in the *305 United States District Court for the Southern Division of the Northern District of Alabama under section 77B of the Bankruptcy Act, as amended. This petition was approved by the court and, by proper orders, the corporation was continued in possession of its property and carried on and conducted its business under direction of the court. The funded debt and capitalization of the Woodward Iron Company consisted of $11,774,000 in first mortgage bonds; $1,840,000 in first mortgage collateral trust notes, both of these being long-term securities; 6 per cent preferred stock of $2,874,400; 7 per cent preferred stock of $385,600; and common stock of $6,371,400. On January 29, 1937 a plan of reorganization for the Woodward Iron Company was approved by the court providing for the issuance of new first mortgage 5 per cent bonds in a total amount of $7,734,000 second mortgage 5 per cent income bonds in the amount of $8,536,150, and 177,814 shares of new common stock with a par value of $10 per share. Under this plan the holders of the first mortgage trust notes of the corporation were to receive the full amount of accrued interest in cash and the option of receiving the principal in cash or *306 new fixed interest-bearing bonds. Holders of the old first mortgage bonds were to receive in satisfaction of principal thereof and interest, for each $1,000 principal amount thereof, $500 principal amount of new fixed interestbearing bonds, $725 of new income bonds less such of the total amount as might, with the approval of the bondholders committee, be paid in cash on account of the unpaid interest on such old first mortgage bonds. The holders of the 6 per cent preferred stock were to receive 3 1/2 shares of the new common stock and the holders of 7 per cent preferred stock were to receive for each share 3 1/2 shares of new common stock plus $2.81 in cash. The holders of old common stock were to receive for each share thereof one share of new common stock. All of the old bonds, notes and old preferred and common stock were to be cancelled upon consummation of the plan. The reorganization, as above set out, was consummated on April 1, 1937. Petitioner's transferor received thereunder in exchange for its $25,000 principal amount of old first mortgage bonds plus accrued interest of $5,615.45 thereon, new fixed interest bonds in the face amount of $12,500 and new income bonds in the *307 face amount of $15,000 plus $3,115.45 in cash. The $5,615.45 excess received in cash and bonds by the transferor in this transaction over the $25,000 cost basis to transferor of its old bonds exchanged was entered on the transferor's books and included in its gross income on its tax return for the year 1937 as interest received. This return indicated a total tax liability of $13,752.74 which was paid in the transferor's name by petitioner to the collector of internal revenue for the Twenty-third District of Pennsylvania in quarterly installments on March 15, June 15, September 15 and December 15, 1938. On the 14th day of March, 1941 a claim for refund in the amount of $13,752.74, so paid by petitioner, was filed in the transferor's name by petitioner. [Opinion] These facts disclose that the reorganization of the Woodward Iron Company was effected by a pure recapitalization constituting a statutory reorganization under section 112 (g) (1) (D) of the Revenue Act of 1936. [1] Thus no gain was there recognized as to the securities received in exchange for the old securities. Respondent does not contend otherwise. His position is that the securities in the Woodward Iron Company *308 held by petitioner transferor prior to reorganization were only the bonds in their face amount and did not include accrued and unpaid interest thereon. He then argues that the total amount of the new bonds and cash received, in excess of the face amount of the old bonds, constitutes taxable income. On this contention respondent is concluded by ; ; affd., ; cert. denied, ; and . Petitioner's transferor was taxable only upon the $3,115.45 in cash received upon the reorganization since the conditions of sections 112 (b) (2) and (3) and (c) (1) of the Revenue Act of 1936 [2] are met. *309 Decision will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. (g) Definition of Reorganization. - As used in this section and section 113 - (1) The term "reorganization" means * * * (D) a recapitalization. * * *.↩
2. SEC. 112. RECOGNITION OF GAIN OR LOSS. (b) Exchanges Solely in Kind. - * * * * *
(2) Stock for Stock of Same Corporation. - No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation. (3) Stock for Stock on Reorganization. - No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization. exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * * * *
(c) Gain from Exchanges Not Solely in Kind. - (1) If an exchange would be within the provisions of subsection (b)(1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.↩